UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Joseph O. Dixon,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Charles Schwab & Co., Inc.,<br><br>　　　　Defendant. | Civ. No. 22-2933 (JWB/DLM)<br><br>**MEMORANDUM OPINION AND ORDER AFFIRMING ARBITRATION AWARD AND GRANTING DEFENDANT'S MOTION TO DISMISS** |

Joseph O. Dixon, Pro Se.

Devin Driscoll, Esq., Sandra S. Smalley-Fleming, Esq., and Terrence J. Fleming, Esq., Fredrikson & Byron, P.A., counsel for Defendant.

　　This matter first came before the Court on Defendant Charles Schwab and Co., Inc. ("Charles Schwab")'s Motion to Dismiss Plaintiff Joseph Dixon's Complaint as barred by res judicata. (Doc. No. 12.) After allowing time for Charles Schwab to properly serve its motion and for Mr. Dixon to consult with pro bono counsel, Mr. Dixon filed a second petition to vacate the underlying arbitration award. (*See* Doc. Nos. 76–78.) Charles Schwab opposes the petition and seeks to affirm the award. (Doc. No. 100.)

　　Having reviewed the arbitration proceedings, the Court determines that Mr. Dixon has not shown a basis to vacate the award. The Court therefore denies his petition and affirms the award. Accordingly, because Mr. Dixon's Complaint seeks to recover based upon the same alleged facts as his arbitration claims, the Court grants Charles Schwab's motion to dismiss and dismisses the Complaint with prejudice.

## BACKGROUND

Mr. Dixon owned 27,414,941 shares of stock through brokerage firm Charles Schwab. (Doc. No. 1 at 1, ¶ 41.) According to Mr. Dixon, the stocks were performing well and growing, to the tune of a $100,000.00 portfolio. (*Id.* ¶ 42.) However, in August 2021 Charles Schwab informed Mr. Dixon that he was barred from trading. (*Id.* ¶¶ 43–44.) Mr. Dixon claims his portfolio plummeted to $0 as a result of the blockade and other manipulation by Charles Schwab. (*Id.* ¶¶ 21, 33.) But for Charles Schwab's interference and meddling, Mr. Dixon believes he would have increased his shares' value to at least $1.00 per share, for a total portfolio value of $27,414,941.00. (*Id.* ¶¶ 46–49, 61–63.)

Mr. Dixon submitted his claims to arbitration before the Financial Industry Regulatory Authority ("FINRA"), as required by his account agreements. (Doc. No. 14-1 at 87–88, 91.) The arbitration culminated in a hearing on July 27, 2022, where Mr. Dixon made his case to a three-arbitrator panel. (*Id.* at 96–97.) After Mr. Dixon's presentation, Charles Schwab moved to dismiss the claims. (*Id.* at 97.) After reviewing briefs from both parties, the panel granted Charles Schwab's motion on August 15, 2022, ruling that "there is no support for [Mr. Dixon]'s case under any possible theory of recovery." (*Id.*)

On September 8, 2022, Mr. Dixon sought to vacate the arbitration award. *Dixon v. Charles Schwab & Co. Inc.*, No. 22-cv-2199 (NEB/ECW), Doc. No. 1 (D. Minn. Sept. 8, 2022). His petition did not survive initial review. Judge Brasel dismissed it because Mr. Dixon failed to establish a statutory basis to vacate the award. *See id.*, Doc. No. 5.

Mr. Dixon filed a civil Complaint a month later on November 17, 2022, seeking to recover the millions he claims he lost due to Charles Schwab's meddling. (*See generally*

Doc. No. 1.) In late December 2022, Charles Schwab moved to dismiss Mr. Dixon's Complaint as barred by res judicata, since it asserts the same claims decided by the FINRA arbitration. (Doc. No. 12.) Following a series of letters to the court and a status conference regarding proper service of Charles Schwab's motion, the Court granted Mr. Dixon leave to respond to Charles Schwab's motion and to consult with pro bono counsel on the issue of vacating the arbitration award. (Doc. No. 76.)

On May 3, 2023, Mr. Dixon filed an affidavit and memorandum that the Court construed to be a second petition to vacate the arbitration award under 9 U.S.C. § 10(a). (Doc. No. 82.) Charles Schwab opposes Mr. Dixon's petition and seeks to affirm the arbitration award. (Doc. No. 100.) Because Mr. Dixon shows no basis to vacate the award, and because his Complaint seeks to recover on claims the FINRA panel already decided, this Court must deny his petition, affirm the award, and dismiss his Complaint.

## DISCUSSION

### I. The Court Denies Mr. Dixon's Petition to Vacate the Arbitration Award

Court review of arbitration awards is very limited. *Great Am. Ins. Co. v. Russell*, 914 F.3d 1147, 1150 (8th Cir. 2019) (quotation omitted). An award will not be vacated even if an arbitrator made a serious error while acting within their authority. *See id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). Courts accord an extraordinary level of deference to the underlying award. *Stark v. Sandberg, Phoenix & von Gontard, P.C.*, 381 F.3d 793, 798 (8th Cir. 2004).

#### A. Equitable tolling

As a threshold matter, Charles Schwab argues that Mr. Dixon's second petition to

3

vacate the arbitration award is time-barred. (*See* Doc. No. 100 at 6–11.) Indeed, a court cannot consider a petition that is filed and served more than three months after the award. *See* 9 U.S.C. § 12; *Piccolo v. Dain, Kalman & Quail, Inc.*, 641 F.2d 598, 600 (8th Cir. 1981). Here, the deadline expired on November 15, 2022, unless equitable tolling applies.

Generally, a party seeking equitable tolling must establish: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Johnson v. Hobbs*, 678 F.3d 607, 610 (8th Cir. 2012). However, it is not clear that any "due diligence" exception applies to 9 U.S.C. § 12. *Piccolo*, 641 F.2d at 601.

Charles Schwab correctly points out that Mr. Dixon's current petition was filed and served in May 2023, nearly six months late. The Court recognizes Mr. Dixon's efforts to pursue his rights with respect to the validity of the FINRA award, and notes that the nature of these proceedings (including Mr. Dixon's apparent misunderstanding of Judge Brasel's order denying his first petition and the procedural hurdle that stands in the way of his Complaint) may amount to "extraordinary circumstances" warranting tolling.[1] But the timeliness of his second petition is ultimately moot because it fails on its merits.

**B.**  **Mr. Dixon's petition does not establish a basis to vacate the award**

The Federal Arbitration Act permits a district court to vacate an arbitration award only in four limited circumstances:

---

[1] If the Court tolled the weeks that Mr. Dixon's first petition was being considered, his Complaint would have been filed (but not served) within the tolled three-month deadline. Viewing his petition and his Complaint as diligent attempts to pursue his rights with respect to the arbitration award, and considering the circumstances that have led to confusion over the substance and effect of filings in this case to be "extraordinary," the deadline *could* be tolled while Mr. Dixon's Complaint is under consideration.

4

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1–4); *see also Med. Shoppe Int'l, Inc. v. Turner Invs., Inc.*, 614 F.3d 485, 488–89 (8th Cir. 2010).

The party seeking to vacate an award bears a substantial burden, regardless of which of the four bases they claim warrants vacating the award. Fraud under § 10(a)(1) must be proved by clear and convincing evidence, must not have been discoverable by due diligence, and must have been materially related to an arbitration issue. *MidAmerican Energy Co. v. Int'l Brotherhood of Elec. Workers Loc. 499*, 345 F.3d 616, 622 (8th Cir. 2003). A party seeking to vacate under § 10(a)(2) "has a high burden of demonstrating objective facts inconsistent with impartiality." *Brown v. Brown-Thill*, 762 F.3d 814, 820 (8th Cir. 2014) (quotation omitted). Misconduct under § 10(a)(3) must be an error "which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001) (quotation omitted). A party seeking relief under § 10(a)(4) "bears a heavy burden" to show an arbitrator exceeded their powers. *Indus. Steel Constr., Inc. v. Lunda Constr. Co.*, 33 F.4th 1038, 1041 (8th Cir. 2022) (quoting *Oxford Health Plans LLC v. Sutter*, 569

5

U.S. 564, 569 (2013)). Mr. Dixon fails to carry his burden to show a statutory basis to vacate the award here.

Mr. Dixon's claims of fraud, corruption, partiality, and arbitrator misconduct are not sufficiently supported by the arbitration record. He agreed to be bound by the rules, process, and outcome of the FINRA arbitration. (Doc. No. 14-1 at 91.) He claims that Charles Schwab failed to file a pre-hearing brief, but such briefing was optional, not required. (*See* Doc. No. 101-7 at 7–8.) He claims the hearing was improperly limited to one day when it was originally scheduled for two, but he had expressly agreed that "the one day hearing and time is acceptable." (Doc. No. 101-9.) He claims that the panel was biased in admitting evidence, but FINRA rules authorized the panel to decide what evidence is admissible, and the panel confirmed with him at the hearing that he had fully presented his case. (*See* Doc. No. 101-1 at 88:18–89:23; 90:21–92:12.)

To the extent that Mr. Dixon claims the award was the result of the panel relying on fraudulent or fabricated evidence, he does not sufficiently support the claim with clear and convincing evidence. Finally, Mr. Dixon claims he was not given an opportunity to respond to Charles Schwab's motion to dismiss the arbitration, but he was given time to argue on the record at the hearing (*see* Doc. No. 101-1 at 175:11–180:10), as well as in writing while the panel considered the motion (*see* Doc. No. 101-3).

The only claim Charles Schwab does not directly refute is Mr. Dixon's complaint that Charles Schwab did not respond to his discovery requests. However, Mr. Dixon does not appear to have raised the issue before or during his arbitration hearing. It is also not clear how the alleged discovery failures affected his ability to present his case or (more

6

importantly) show corruption, partiality, or misconduct on the part of the arbitrators.

As each claimed deficiency is either refuted by the record, falls within the FINRA panel's authority or discretion, or is not sufficiently shown, Mr. Dixon provides the Court no basis to vacate the FINRA panel's award.

## II. The Court Grants Charles Schwab's Cross-Motion to Confirm the Arbitration Award

According to the Federal Arbitration Act, a court must confirm an arbitration award unless the award is vacated or modified. 9 U.S.C. § 9; *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008); *Beumer Corp. v. ProEnergy Servs., LLC*, 899 F.3d 564, 565 (8th Cir. 2018). A party has one year to request confirmation. 9 U.S.C. § 9.

Here, Charles Schwab filed its motion on time—less than one year after August 15, 2022. Because Mr. Dixon has not established a basis to vacate the award, the Court must grant Charles Schwab's motion and confirm the award.

Having resolved the validity of the arbitration award, the Court turns to Charles Schwab's motion to dismiss Mr. Dixon's Complaint.

## III. The Court Grants Charles Schwab's Motion to Dismiss

To survive a motion to dismiss, a plaintiff must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For an affirmative defense such as res judicata to provide a basis for dismissal, the defense must be apparent on the face of the complaint, which includes public records and materials embraced by the complaint and materials attached to the complaint. *A.H. ex rel.*

*Hubbard v. Midwest Bus Sales, Inc.*, 823 F.3d 448, 453 (8th Cir. 2016).

    A.    **Res judicata standard**

"Res judicata applies to prevent repetitive suits involving the same cause of action." *Ripplin Shoals Land Co., LLC v. U.S. Army Corps of Engineers*, 440 F.3d 1038, 1042 (8th Cir. 2006). In determining res judicata, the Court considers three elements: "(1) whether the prior judgment was entered by a court of competent jurisdiction; (2) whether the prior decision was a final judgment on the merits; and (3) whether the same cause of action and the same parties or their privies were involved in both cases." *Id.*

Under Minnesota law, the res judicata test includes four elements: "(1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privies; (3) there was a final judgment on the merits; [and] (4) the estopped party had a full and fair opportunity to litigate the matter." *Laase v. Cnty. of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) (quoting *Hauschildt v. Beckingham*, 686 N.W.2d 829, 840 (Minn. 2004)).

"The law of the forum that rendered the first judgment controls the res judicata analysis." *Laase*, 638 F.3d at 856. Since the judgment at issue here is a FINRA arbitration award, arguably federal law should control. But since Mr. Dixon's Complaint could include both federal and state-law causes of action, and the tests are not substantially different, the Court will analyze both standards together.

    B.    **All res judicata elements are present here**

The federal and Minnesota res judicata tests can be distilled into three overlapping elements: (1) the prior judgment was a final decision on the merits; (2) the current case

8

involves the same claims and the same parties; and (3) the previous decisionmaker was a court of competent jurisdiction and offered a full, fair opportunity to be heard. Because each of those elements is present here, res judicata applies to bar Mr. Dixon's Complaint.

1. **Final decision on the merits**

Most res judicata cases treat arbitration awards as final decisions, but few specifically state that arbitration awards are final decisions *on the merits* for purposes of res judicata. *See, e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Nixon*, 210 F.3d 814, 817 (8th Cir. 2000) ("We have specifically held that an arbitrator's award constitutes a final judgment for the purposes of collateral estoppel and *res judicata*."), *abrogated on other grounds by E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002); *see also Carlisle Power Transmission Prods., Inc. v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, Loc. Union No. 662*, 725 F.3d 864, 867 (8th Cir. 2013) ("The 2007 arbitration decision constituted a final judgment on the merits, because the arbitrator decided the sole legal issue presented[.]").

The FINRA panel does seem to have ruled on the merits in Mr. Dixon's case. After a discovery period and a daylong evidentiary proceeding, the FINRA panel issued what amounts to a dismissal for failure to state a claim: "the Panel grants the Motion to Dismiss on the grounds that there is no support for Claimant's case under any possible theory of recovery." (Doc. No. 14-1 at 97.)

Fed. R. Civ. P. 41(b) states that "any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." Accordingly, the Eighth Circuit has recognized that a

9

court order granting a motion to dismiss for failure to state a claim constitutes a final decision on the merits for purposes of res judicata. *Clark v. Callahan*, 587 F. App'x 1000, 1002 (8th Cir. 2014) ("It is well-established that the dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits." (internal quotations omitted)); *see also Micklus v. Greer*, 705 F.2d 314, 317 (8th Cir. 1983).

The FINRA panel granted Charles Schwab's motion to dismiss because Mr. Dixon failed to prove his claims ("there is no support for Claimant's case"), not due to some jurisdictional or technical pleading defect. Combined with the caselaw holding that arbitration awards are final decisions, that arbitration awards are "on the merits" when they resolve some legal question, and that orders dismissing for failure to state a claim are "on the merits," the Court considers the FINRA panel's award here to be a final decision on the merits for purposes of res judicata.

**2.  Same parties, same claims**

Generally, "a claim is barred by res judicata if it arises out of the same nucleus of operative facts as the prior claim." *Lane v. Peterson*, 899 F.2d 737, 742 (8th Cir. 1990). Mr. Dixon's arbitration petition stemmed from the same wrongdoing he alleges in his Complaint: that Charles Schwab improperly precluded him from trading and fraudulently manipulated his portfolio in 2021. He makes the same claims against the same party.

Importantly, res judicata not only bars the claims actually brought in the first matter, it also bars any other claims that *could have* been brought based on the same alleged wrongdoing. *See Ripplin Shoals*, 440 F.3d at 1042. Even *new* claims against Charles Schwab arising from the 2021 events would be prohibited.

      **3.    Court of competent jurisdiction; full and fair opportunity to be heard**

Mr. Dixon agreed to follow the FINRA arbitration process and abide by the result when he submitted his arbitration petition. And at least one district court has expressly recognized a FINRA arbitration panel as a court of competent jurisdiction for res judicata purposes. *Lobaito v. Chase Bank*, Civ. No. 11-6883 (PGG), 2012 WL 3104926, at *4 (S.D.N.Y. July 31, 2012) ("It is likewise clear that the FINRA arbitration panel is a court of competent jurisdiction for *res judicata* purposes."). There is no basis to conclude that the FINRA panel lacked authority to decide Mr. Dixon's petition.

Likewise, the Court is not persuaded that Mr. Dixon did not have a full and fair opportunity to be heard. A party's presence and participation in arbitration satisfies the "full and fair opportunity" element. *See Am. Fed'n of Television & Radio Artists Health & Ret. Funds v. WCCO Televison, Inc.*, 934 F.2d 987, 991 (8th Cir. 1991). The "full and fair opportunity" question "generally focuses on whether there were significant procedural limitations in the prior proceeding, whether the party had the incentive to litigate fully the issue, or whether effective litigation was limited by the nature or relationship of the parties." *State v. Joseph*, 636 N.W.2d 322, 328 (Minn. 2001). Disagreeing with a ruling does not mean a person did not have a full and fair opportunity to be heard. *See id.* at 329. Although Mr. Dixon got an unfavorable result, he was given a full process and an opportunity to prove his case before a panel of neutral decisionmakers who had proper authority to decide his claims.

Because all of the state and federal res judicata elements are present, Mr. Dixon

11

can no longer seek relief based on the allegations he made in the FINRA arbitration and repeats in his Complaint. The Court will dismiss this matter accordingly.

## ORDER

**IT IS HEREBY ORDERED** as follows:

1. Plaintiff Joseph O. Dixon's Petition to Vacate the Arbitration Award (Doc. No. 78) is **DENIED**;

2. Defendant Charles Schwab & Co. Inc.'s Cross-Motion to Confirm the Arbitration Award (Doc. No. 100) is **GRANTED**, and the August 15, 2022 arbitration award is **CONFIRMED**;

3. Defendant's Motion to Dismiss (Doc. No. 12) is **GRANTED**;

4. Plaintiff's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE** as barred by res judicata; and

5. Plaintiff's Motion for Summary Judgment (Doc. No. 90), Motion for Trial Date, Place, and Time for Motion for Summary Judgment (Doc. No. 97), and Motion for Judgment Against Defendant (Doc. No. 98), and Defendant's Motion for Extension of Time to Respond (Doc. No. 111) are **DENIED as moot**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: June 14, 2023                                  *s/ Jerry W. Blackwell*
                                                     JERRY W. BLACKWELL
                                                     United States District Judge